# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 11CR0671WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| MICHAEL CAREY (1) and ADRIAN MADRID (3), | |
| Defendant. | |

HAYES, Judge:

The following motions are pending before the Court: (1) the Motion to Suppress Wiretap Evidence and to Order the Government to Produce a Bill of Particulars filed by Defendant Michael Carey (ECF No. 57); (2) the Motion to Suppress Evidence filed by Defendant Adrian Madrid; (ECF No. 69) and (3) Amended Motion to Suppress filed by Defendant Adrian Madrid (ECF No. 78).

On February 23, 2011, the grand jury returned an indictment against Defendants Michael Carey, Jose Antonio Hernandez-Gutierrez, Adrian Madrid, Cuauthemoc Arturo Armendariz-Sandoval, and Javier Lacarra for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 1).

## BACKGROUND FACTS

In March 2010, the United States applied for an order authorizing the interception of wire communications over several phones, including (619) 740-9230 (hereinafter T-14). At the time of the application, T-14 was thought to be used by Ignacio Escamilla Estrada, a target in a FBI

- 1 -

11cr0671 WQH

investigation. On March 5, 2010, the court authorized interception of T-14. From March 10, 2010 to March 17, 2010, agents repeatedly intercepted "drug-related" calls over T-14. (ECF No. 61-1 at 2). At some time during this one week period of monitoring, the agents concluded that the person using T-14 was not Ignacio Escamilla Estrada. The agents continued to monitor T-14 because almost all calls over T-14 were drug-related calls consistent with the criminal investigation underway.

An intercepted call on the morning of March 17, 2010 indicated that Madrid would be "coming down" with "invoices" on that day. (ECF No. 76-1 at 33.) In response to the call, investigators took up surveillance and observed Defendant Madrid arrive at an Irvine residence in a Jeep Cherokee. Armendariz backed a Toyota out of the residence's garage, and Defendant Madrid drove the Jeep Cherokee into the garage in its place. Two hours later, Defendant Madrid drove the Jeep Cherokee out of the garage and onto southbound Interstate 5.

Investigators informed an Orange County Sheriff's Deputy that the Jeep Cherokee could be involved with narcotics activity and instructed the deputy to develop independent cause for a stop of the vehicle in order to protect the overall investigation. The Sheriff Deputy took up position on the freeway to intercept the Jeep Cherokee. When the Jeep went by, the Sheriff Deputy pulled into traffic and followed the Jeep Cherokee for one and one-half miles. The Sheriff Deputy observed a broken tail light and stopped the Jeep Cherokee for a violation of Vehicle Code 24525(a).

The Sheriff's Deputy asked Defendant Madrid to exit the vehicle, frisked, and handcuffed him. The Deputy obtained consent to search the vehicle and utilized a narcotics detector dog to assist in the search. The dog alerted along the driver door panel, the rear quarter panel, and the entire rear cargo area. No drugs were discovered. Deputies discovered a black nylon bag in the rear compartment area which contained two large currency bundles of U.S. currency vacuum-sealed in plastic. The total amount seized was approximately $700,000. Deputies found two cell phones in the vehicle, including the phone that Defendant Madrid had been intercepted on earlier in the day.

On the same date, March 17, 2010, deputies obtained a search warrant for the Irvine

1 residence. Armendariz was inside. Deputies discovered 17 kilograms of cocaine in a bedroom
2 safe. Armendariz consented to a search of the Toyota, which contained three manufactured
3 compartments and a false wall.

On or about March 17, 2010, Special Agent Christopher Melzer, the FBI lead investigator, learned that T-14 and associated individuals could be linked to a separate investigation being conducted by ICE and DEA. On March 19, 2010, Agent Melzer met with ICE and DEA agents and determined that there was no overlap between the two investigations other than the T-14 calls.

On July 7, 2010, an indictment was filed as a result of the Escamilla investigation, charging 43 individuals with conspiracy to conduct enterprise affairs through a pattern of racketeering activity. (*United States v. Heredia,* 10CR3044-WQH). In May and June 2011, defendants in the Escamilla case filed Motions to Suppress Wiretap Evidence. On August 24, 2011, the Court issued a written order in *United States v. Heredia* denying all the Motions to Suppress Wiretap Evidence. (ECF No. 808).

**I.     Motion to Suppress Wiretap Evidence (ECF No. 57)**

    **a. Contentions of the Parties**

Defendant Carey contends the Court should suppress all evidence obtained as a result of the wiretaps conducted on T-14 because the affidavits in support of the warrant application failed to demonstrate necessity. Defendant contends the order denying the motion to suppress wiretap evidence in the Escamilla case (10CR3044 ECF No. 808) does not apply to the Carey conspiracy. Defendant asserts the Government was required to make a separate showing of necessity for the new conspiracy once it concluded that T-14 was not used by Escamilla in order to continue intercepting calls on T-14. Defendant contends that there has been no showing that the government tried traditional investigative procedures, nor made a showing that such attempts were reasonably unlikely to succeed if tried prior to intercepting his calls.

The Government contends that the affidavit established necessity for the wiretaps in the Escamilla investigation. The Government contends that the agents properly continued to intercept T-14 even after determining Escamilla was not the primary user. The Government

1  contends that the intercepts may be used for prosecution even if they relate to offenses other
2  than those named in the original order. The Government contends that there is no "prerequisite
3  to interception ... that the affidavit establish necessity to wiretap unknown persons who proved
4  to be actual interceptees." (ECF No. 61 at 7-8).

### b. Legal Standard

Authorization for a wiretap is based on probable cause to believe that the telephone is being used to facilitate the commission of a crime, and the order need not name any particular person if such person is unknown. *See* 18 U.S.C. § 2518(1)(b)(iv); *United States v. Kahn*, 415 U.S. 143, 157 (1974) (wiretap is proper when there is "probable cause to believe that a particular telephone is being used to commit an offense but no particular person is identifiable"); *United States v. Reed*, 575 F.3d 900, 911 (9th Cir. 2009) (agents properly continued to intercept phone after discovering that Jackson, not Reed - the original suspected user - was the "primary user" of the phone); *see also United States v. Nunez*, 877 F.2d 1470, 1473 n. 1 (10th Cir. 1989) ("[T]he government ha[s] no duty to establish probable cause as to each interceptee. It is sufficient that there was probable cause to tap the phone.").

Identification of individuals whose communications will be intercepted is required "if known." 18 U.S.C. § 2518(4)(a). The Supreme Court has concluded that "Congress could not have intended that the authority to intercept must be limited to those conversations between a party named in the order and others, since at least in some cases, the order might not name any specific party at all." *Kahn*, 415 U.S. at 157; *see also United States v. Homick*, 964 F.2d 899, 904 (9th Cir. 1992) (citing *Kahn*, 415 U.S. at 156–57) ("[T]he government may seek a wiretap authorization in order to discover the identities of suspected co-conspirators, and a conversation involving a party not named in the authorization that reveals that party's involvement in the criminal activity under investigation is admissible.").

The necessity requirement is directed to the objective of the investigation as a whole, and not to any particular person. If the Government can demonstrate that ordinary investigative techniques would not disclose information covering the scope of the drug trafficking enterprise under investigation, then it has established necessity for the wiretap. *See United States v.*

*McGuire*, 307 F.3d 1192, 1197–99 (9th Cir. 2002). "[T]he government ha[s] no duty to establish [necessity] as to each possible interceptee. It is sufficient that there was [necessity] to tap the phone." *Nunez*, 877 F.2d at 1473 n. 1 (citations omitted).

Congress addressed situations where law enforcement officers intercept communications relating to offenses not named in the original order. 18 U.S.C. 2517(5) provides, "[w]hen an investigative or law enforcement officer, while engaged in intercepting . . . electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section." Subsections (1) and (2) permit law enforcement officers to disclose the communications to another investigative or law enforcement officer to the extent such use is appropriate to the proper performance of his official duties. *Id.*

### c. Ruling of the Court

In this case, the Government complied with the original wiretap authorization requirements, including necessity and minimization. This Court issued an order in *United States v. Heredia,* Case No. 10CR3044 WQH denying the defendants' Motion to Suppress Wiretap Evidence for Failure to Comply with Necessity and Minimization Requirements. (ECF No. 808 at 30). The Court concluded that the "affidavits in support of each application provided 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous' in compliance with 18 U.S.C. § 2518(1)(c)." (ECF No. 808 at 28-29).

The agents concluded Escamilla was not the primary user after an unspecified time of monitoring T-14. (ECF No. 61 at 2). There was no requirement for a separate showing of necessity once the agents concluded that T-14 was not primarily used by Escamilla. The agents reasonably believed that the callers and calls might be affiliated with Escamilla or other offenses. On March 17, 2010, Special Agent Melzer subsequently learned of a link to a separate investigation. This link was confirmed two days later when he met with DEA and ICE agents, and it was determined that there was no overlap between the two investigations. No

communications were intercepted after the agent determined that the two investigations were separate.[1]

The Motion to Suppress Wiretap Evidence filed by Defendant Michael Carey is denied.

**II. Motion to Order the Government to Issue a Bill of Particulars (ECF No. 57)**

The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense, and enable him to prepare an intelligent defense. *Duncan v. United States*, 392 F.2d 539, 540 (9th Cir. 1968). "Generally an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged." *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995). Often, full discovery "obviates the need for a bill of particulars." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). A defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case. *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963).

The granting or refusal to grant the bill of particulars is a matter within the sound discretion of the trial court. *Wong Tai v. United States*, 273 U.S. 77 (1927); *see United States v. Buckner,* 610 F.2d 570, 574 (9th Cir. 1979). The indictment in this case provides a plain, concise, and definite written statement of the essential facts constituting the crime with which he has been charged, and was adequate under Fed. R. Crim. P. 7. The Government has provided Carey with complete discovery including "over 1400 pages of reports and other documents generated or obtained through the investigation.**"** (ECF No. 61 at 12).

The Motion to Order the Government to Produce a Bill of Particulars is denied.

**III. Motion to Suppress Evidence (ECF No. 69 and ECF No. 78).**

    **a.    Contentions of the Parties**

Defendant Madrid contends the stop of his vehicle violated his Fourth Amendment rights. Madrid contends that his tail light was not broken on the day he was stopped. Madrid contends that even if the traffic stop was initially lawful, it was unlawfully prolonged by the additional searches by officers and the narcotic detector dog. Madrid contends that the Government bears

---

[1] Defendant has made no showing of any facts which would require a *Franks* hearing.

the burden of proving that he voluntarily and intelligently gave consent to search his vehicle. *Id.* Madrid contends that any evidence obtained as a result of the Fourth Amendment violation must be suppressed including the subsequent seizure at the Irvine residence.

The Government contends that the collective knowledge of the investigators provided probable cause to stop and search the vehicle. The Government contends that repeated, intercepted calls of Defendant Madrid and others during the preceding seven days indicated Defendant Madrid was involved in receiving, off-loading, and transporting drug shipments in the United States and transporting currency to Mexico. The Government contends agents observed Madrid parking his vehicle in a closed garage, departing shortly thereafter and driving south towards Mexico. The Government contends the intercepted phone call from the morning of March 17, 2010 and the subsequent surveillance provided probable cause to believe that evidence of criminal activity would be found in the vehicle.

### b. Legal Standard

"[A]ll that is required to stop and search an automobile on the highway is probable cause to believe that it contains any type of contraband." *United States v. Azhocar*, 581 F.2d 735, 737 (9th Cir. 1978); *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) ("police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime"). The Supreme Court defines probable cause as "a fair probability that contraband will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). *Gates* emphasized that "'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Id.* at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). This assessment is based on "the collective knowledge of all the officers involved in the criminal investigation [even if] all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (internal quotation marks omitted).

### c. Ruling of the Court

In this case, the government agents intercepted phone calls between Defendant Madrid

and others indicating Defendant Madrid was involved in drug trafficking between the United States and Mexico. On March 17, 2010, agents intercepted a call indicating Defendant Madrid would be transporting contraband later that day. Government agents observed Defendant Madrid arrive at a residence, park in a closed garage, and then leave shortly after driving southbound towards Mexico. The Court concludes that the government agents had probable cause to believe that Defendant Madrid's vehicle contained contraband or evidence of criminal activity. The Government had probable cause to stop and search Madrid's vehicle.

## CONCLUSION

IT IS HEREBY ORDERED that (1) the Motion to Suppress Wiretap Evidence and to Order the Government to Issue a Bill of Particulars (ECF No. 57) is DENIED; (2) the Motion to Suppress Evidence (ECF No. 69) is DENIED and (3) the Amended Motion to Suppress (ECF No. 78) is denied.

DATED: May 24, 2012

**WILLIAM Q. HAYES**
United States District Judge